IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 7, 2001 Session

## STATE OF TENNESSEE v. PAUL PAYNE, JR.

**Appeal from the Circuit Court for Tipton County**
**No. 3934    Joseph H. Walker, Judge**

---

**No. W2001-00216-CCA-R3-CD  - Filed February 19, 2002**

---

The defendant, Paul Payne, Jr., was convicted in a bench trial of driving under the influence of an intoxicant. The trial court imposed a sentence of 11 months and 29 days and suspended all but 48 hours. The defendant was fined $350.00. In this appeal of right, the defendant complains that the stop of his vehicle was unlawful, that the evidence at trial was insufficient, and that there was no reasonable basis for the administration of the blood alcohol test. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Michael W. Whitaker, Covington, Tennessee, for the appellant, Paul Payne, Jr.

Paul G. Summers, Attorney General & Reporter; Mark E. Davidson, Assistant Attorney General; and Kim Linville, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Shortly after midnight on September 4, 1999, Officer Mike Durham of the Atoka Police Department was patrolling Highway 51, a divided four-lane highway, when he observed a vehicle weaving back and forth from the center line over beyond the fog line in the left-hand lane. As the vehicle made a left turn across the oncoming lanes of Highway 51 and onto Tipton Road, Officer Durham saw it veer into the oncoming lane of traffic before being directed back into the proper lane. After following the vehicle for approximately one-fourth mile, Officer Durham activated his blue lights and the vehicle stopped. Because the driver's window was open when Officer Durham approached the vehicle, he was able to detect the odor of alcohol from the defendant, who was in the driver's seat. As the defendant handed Officer Durham his operator's license, a second officer, Richard Glasgow, arrived at the scene. Officer Durham asked the defendant to step outside of the vehicle and then asked the defendant whether he had any physical conditions that would prevent him from performing field sobriety tests. When the defendant answered in the negative, Officer Durham

administered the nine-step heel-to-toe walk and turn. According to the officer, the defendant took 12 steps instead of nine, raised his hands to steady himself, and stepped off the center line more than once. When performing the one-leg stand, the defendant dropped one foot on the second count. According to the officer, the defendant was also unable to perform the test on a second attempt and, on a third attempt, acknowledged that he was unable to satisfactorily perform the test. Finally, the defendant performed poorly on the finger-to-nose test. When questioned, the defendant admitted to Officer Durham that he had drunk a pint of gin. A search of the vehicle yielded three marijuana cigarettes in the front ashtray, one marijuana cigarette in the rear ashtray, hemostats, and a pair of tweezers with burn marks.

Officer Glasgow, who videotaped the field sobriety tests, submitted the videotape as evidence at trial. Officer Glasgow confirmed that he had performed a search of the vehicle and recovered the items described.

Officer Durham testified that the defendant consented to a breathalyzer examination. He registered .14 on the ECIR Intoximeter. Special Agent Robert Marshall of the TBI, an expert in the field of calibration of blood alcohol instruments, testified that the Intoximeter was properly certified and calibrated before and after the date of arrest and was operating properly when the defendant was tested.

Atoka Police Officer Mark Johnson transported the drugs to the TBI Crime Laboratory. Special Agent Brian Lee Eaton, who performed the chemical analysis, confirmed that the substance taken from the vehicle was marijuana.

The defendant, a 53-year-old bus driver for the Massachusetts Transportation Authority, held a commercial driver's license and had been a bus driver for 26 years. Originally from Atoka, the defendant testified that he had flown into Memphis on September 3 and had arrived at his sister's house in Atoka at approximately 10:00 P.M. He testified that shortly after his arrival, he borrowed his sister's car and drove to Harper's Café, owned by Eddie Harper, who was an old friend. The defendant recalled that he visited with four of his old friends while at Harper's and he claimed that he took only one drink from his half-pint bottle of Canadian Mist Bourbon. He claimed that he stayed at the café only 30 minutes before his departure and denied having driven recklessly before his arrest by Officer Durham. The defendant contended that the only time he crossed the centerline was to make the left turn onto Tipton Road on his way back to his sister's residence. At trial, he acknowledged telling Officer Durham that he had a drink at the bar and he recalled giving his consent to the field sobriety tests. The defendant explained that his unsatisfactory performance on the tests was due to injuries he received to his left leg while serving in Vietnam. He testified that he not only had a permanent injury to his left calf muscle but also later had a steel plate inserted into his left knee. He claimed that he had to walk like a "duck" in order to keep his balance. The defendant acknowledged that he was unable to perform the one-leg stand because of his injured left leg. He contended, however, that he had informed Officer Durham that he would be unable to balance himself because of his leg injury. He testified that he was unable to balance himself on that leg because he was wearing high-heeled dress shoes. After conceding that he had never informed

Officer Durham that his injuries would hamper his performance on the walk and turn test, he claimed that his injuries did, in fact, cause his failure. He contended that Officer Durham had not allowed him to finish one of the field sobriety tests and had failed to provide proper instructions on the heel-to-toe test.

The defendant also insisted that Officer Glasgow began to search his vehicle as soon as he arrived at the scene. He remembered that Officer Glasgow yelled, "I've got drug paraphernalia," just before Officer Durham placed him in handcuffs. The defendant denied any knowledge of the marijuana or the hemostats. The defendant testified that as a bus driver, he was often required to take breathalyzer examinations. He blamed his high test results on the officer's failure to provide him with a clean mouthpiece.

I

The defendant first argues that the arresting officer had an insufficient basis for the investigatory stop. He argues that Tennessee courts require that a driver display "erratic" driving, something more than weaving within a single lane of the roadway. He describes the Tennessee standard for an investigatory stop as "weaving plus," much more than mere imperfections in driving a vehicle.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). The state always carries the burden of establishing the reasonableness of any detention. See State v. Matthew Manuel, No. 87-96-III (Tenn. Crim. App., at Nashville, Nov. 23, 1988).

Among the narrowly defined exceptions to the warrant requirement is an investigatory stop. See Terry v. Ohio, 392 U.S. 1 (1968). An investigatory stop is deemed less intrusive than an arrest. See id. In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of the stop of the vehicle depends on whether the officers had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its

occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 792 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that

> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Pulley, 863 S.W.2d at 32 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 499 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norwood, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

In this instance, the trial court overruled the motion to suppress, concluding that the officer had a reasonable basis to stop the vehicle and probable cause to arrest the defendant and direct a blood alcohol examination. In State v. Odom, 928 S.W.2d 18 (Tenn. 1996), our supreme court held that a trial court's finding of fact in a suppression hearing should be upheld unless the evidence preponderates otherwise. The application of the law to the facts, however, remains a question of law that requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). If the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The defendant relies primarily upon two cases: State v. Smith, 21 S.W.3d 251 (Tenn. Crim. App. 1999), and State v. Binette, 33 S.W.3d 215 (Tenn. 2000). In Smith, a panel of our court held that failing to signal a lane change neither violated the traffic code nor justified a stop and that driving on the white line after making a lane change was not a sufficient basis for a reasonable suspicion that the defendant was intoxicated. 21 S.W.3d at 257-58. In Binette, a videotape established that the defendant was weaving within his own lane of traffic along a winding road. The videotape also showed that "Binette did not violate any rules of the road during the period in which the video camera recorded his driving." 33 S.W.3d at 219. Our supreme court determined that

Binette had proceeded correctly through a number of intersections and stop lights and had maintained a proper distance behind the vehicles he was following. It observed that during the entire video taping, Binette's vehicle only twice touched the centerline in his own lane. Under these circumstances, the court held that there were not sufficient specific and articulable facts to support a reasonable suspicion justifying the investigatory stop.

The facts in the case at issue are distinguishable from those in both Smith and Binette. Here, Officer Durham observed the defendant weave back and forth several times from the center line over past the fog line in the left-hand lane of a four-lane highway. When the defendant made the turn onto Tipton Road, he veered into the oncoming lane of traffic before returning to the proper lane. These circumstances, in our view, are more exaggerated and serve as a reasonable basis for the investigatory stop. The articulable facts suggest more than mere imperfections in driving or inattention to detail. See State v. Chris A. Jefferson, No. E2000-00429-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Dec. 8, 2000); State v. Don Palmer Black, No. 03C01-9812-CR-00424 (Tenn. Crim. App., at Knoxville, Dec. 29, 1999).

II

Next, the defendant challenges the sufficiency of the evidence. This argument is based primarily upon the defendant's contention that the evidence gained as a result of the stop should have been suppressed.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

The evidence establishing the guilt of the defendant included his weaving across the fog line several times and actually driving in the lane of oncoming traffic on Tipton Road. According to Officer Durham, the defendant smelled of alcohol and performed poorly on three field sobriety tests. The defendant admitted that he had consumed alcohol and registered .14 on a breathalyzer examination. In our view, the evidence was sufficient.

### III

Finally, the defendant argues that the results of the blood alcohol examination should have been suppressed. The defendant submits that his physical disabilities were the cause of his failure to adequately perform the field sobriety tests and, had the officer properly inquired about these limitations, the results of the field sobriety tests would not qualify as reasonable suspicion to justify the blood alcohol examination.

The administration of a breathalyzer examination for a determination of the blood alcohol level is a seizure of the person and falls within the protections of the federal and state constitutions. Warrantless searches, as previously indicated, are presumed unreasonable, subject to certain exceptions. One exception to the warrant requirement is the exigent circumstances rule. Because the blood alcohol content diminishes with time, a compulsory blood alcohol examination falls within the exigent circumstances exception. State v. Michael A. Janosky, No. M1999-02574-CCA-R3-CD (Tenn. Crim. App., at Nashville, Sept. 29, 2000) (citing Schmerber v. California, 384 U.S. 757, 770 (1966)); see also generally State v. Krantz, 848 P.2d 296, 299 (Ariz. App. 1993); State v. Taylor, 531 A.2d 157, 160 (Conn. App. 1987); State v. Nickerson, 973 P.2d 758, 762 (Ida. Ct. App. 1999); Village of Algonquin v. Ford, 495 N.E.2d 595, 596 (Ill. App. 1986).

In addition to the exigent circumstances, another basis that supports the admissibility of the breathalyzer test is the defendant's consent. Tennessee Code Annotated section 55-10-406(a)(1) provides that "any person who drives any motor vehicle in the state is deemed to have given consent" to a test for blood alcohol or drug content, provided that the law enforcement officer has "reasonable grounds to believe such a person was driving under the influence of an intoxicant or a drug."

In our view, the defendant's erratic driving, his admission that he had consumed alcohol, and his failure to perform satisfactorily on the field sobriety tests formed the factual basis that a blood alcohol test was likely to reveal further evidence of the offense of driving under the influence. Moreover, the record demonstrates that the defendant consented to the examination under Tennessee Code Annotated section 55-10-406(a)(1). This issue, therefore, has no merit.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE