Bissell, J.
This was an action brought by the appellant in February, 1890, to recover damages for his arrest and imprisonment on criminal proceedings alleged to have been-instigated against him by Major. They were initiated by a complaint sworn to by the defendant and filed with a justice. It was contended that in instituting and carrying on this proceeding the defendant acted maliciously and without probable cause. The cause came on for trial before a jury, and upon the conclusion of the plaintiff’s testimony he was nonsuited. It is this error which furnishes the basis of the present appeal. The nature of the action and the ruling of the court upon the motion for a nonsuit raised but one question entitled to consideration, and that was as to the existence of probable cause.
A statement of the evidence in this respect is essential to a clear understanding of the case. It appeared that in the spring of 1889 one Betts, and the defendant, Major, were occupants of the same office in Denver, and in some way had learned that Clement was the owner of certain property located in the city of Denver. It would appear that Major *299 was desirous of obtaining an option on this property, and that at his request Betts wrote a letter to Clement which substantially stated, that he had a purchaser for the two lots at a price named, payable partly in cash and the balance in one and two years at eight per cent interest, secured by a trust deed on the property. The vendor was to give a good title and to furnish an abstract. The letter directed Clement to telegraph Betts at once if he would accept thé proposition, and concluded, “ I will close as your agent and make out papers and forward to you for signature. The money will be ready before the papers are made. Wire me to ask $50 on deposit.” This letter was signed by Betts. Clement telegraphed, “Accept if $50 forfeiture is paid.” It is clear from the testimony, that of this letter and dispatch Major had full knowledge, the letter being probably written at his suggestion. The dispatch was shown him, and on the day of its receipt Betts, as the agent of Clement, undertook to enter into a written contract with Major to sell him the property at the price named in his original letter, with payments according to its specification, save that there was no provision in the contract that the deferred payments were to be secured by a trust deed upon the property. It provided for a warranty deed by the first day of June, 1889, and made provision that the $300 might be tendered or paid at that date. It likewise contained a provision that the contract should be void and both parties released, and the $50 held as liquidated damages, if the $300 was not paid at the date named. This contract was signed Charles W. Betts, Agent for C. P. Clement. Subsequently, and in the execution of this option, Betts prepared a deed for the lots to one Innman and sent it to Clement for execution. It was executed and acknowledged by Clement at Aspen on the 30th of May, and returned to Betts with instructions not to deliver it until some arrangement was made whereby the parties purchasing should either take up a matured and outstanding encumbrance on the property, or provide for it in this deal. This condition led to a failure to complete the sale on the day *300 named in the agreement. Afterwards Clement came to Denver and entered into somewhat extended negotiations with the parties. Major refused to carry out the deal on those terms, unless Clement would submit to a very considerable discount from the money to be paid. This he declined to do. So far as can be gathered from the record the dispute developed a good deal of bad blood between the parties. Major insisted upon his deed, regardless of the encumbrance, put his option upon record on the 22d of June, and evidently impressed Clement with the idea that he intended in any event to enforce that contract as against him. Clement, apparently being unfamiliar with business ways and methods and fearing lest he should lose his property, made a voluntary deed to F. M. Binney, of Amesbury, Massachusetts, and put it on record himself, thinking, evidently, that if the property was thus deeded he could not lose it through any action which might be taken by Major. It appeared in testimony that this deed was without any consideration, and that its execution and record were unknown to the grantee, who was a lady and a friend of Clement residing in Amesbury. Shortly after this deed got upon record Major filed a complaint under the statute, charging Clement with having conveyed to another person, for a valuable consideration, property which he liad previously agreed to sell and convey. These proceedings culminated in Clement’s indictment by the grand jury. The indictment contained a half dozen counts charging him with having sold, conveyed, agreed to convey, and thereafter sold, conveyed and agreed to convey, for a valuable consideration, the same and identical property. He was tried before a jury and promptly acquitted, the jury not leaving their seats. On the trial of the present suit the plaintiff proved the contract under which Major claimed his right, and that the deed to Binney was known by Major to have been a voluntary deed, executed without consideration. The naked question therefore is, though it has a double aspect, whether the court erred in granting the motion, and whether there was enough proven by the plaintiff to entitle *301 the jury to find a verdict in his favor, providing they found the facts in accordance with his testimony.
A nonsuit should never he granted, unless a verdict upon the whole proof would be set aside as against evidence. The cases upon this subject express the same principle in different forms, and in different ways, but the result in them all is precisely the same. Carl v. Ayers, 53 N. Y. 14; Thompson v. Lumley, 50 How. Prac. 105; Clemence v. City of Auburn, 66 N. Y. 334; Johnson v. Hamburger, 13 Wis. 175.
The next element in the inquiry is as to the existence or non-existence of probable cause for Major to believe that Clement had been guilty of the crime defined by the statute. Probable cause, as a phrase, has been as often interpreted as as any other term of description in use in the law. The authorities are harmonious upon the subject, and in general it is “ such a state of facts and circumstances as would lead a man of ordinary caution and prudence and good conscience impartially, reasonably and without prejudice upon the facts within his knowledge to believe that the person accused is guilty.” Heyne v. Blair, 62 N. Y. 19; Hall v. Suydam, 6 Barb. 83; Carle v. Ayres, supra; Galloway et al. v. Stewart, 49 Ind. 156.
In the light of this simple principle it is very evident that the court erred in withdrawing the case from the consideration of the jury. It is wholly unnecessary to consider the force and effect of the original letter by Betts, and Clement’s telegraphic response, with reference to the contractual features presented by that correspondence. It is doubtful at best whether a contract could be derived from them which would be binding upon Clement, viewed in the light of the circumstances out of which the letter sprung and the relation which the agent bore to Major. But this need not be determined, since whatever right Major claimed, and that which he was seeking to enforce, grew out of the option or contract which he procured from Betts. It is very clear that that was not an enforceable contract to convey real property as against Clement, or in Major’s favor. In the first place *302 the contract was not in terms according to the letter which Betts sent, and which Clement accepted by wire, since it failed to provide for any security for the unpaid purchase money, which certainly must be taken as a very substantial part of a contract of that description. On this ground alone it must be held that Betts was without authority to execute the contract which he did, and that Major is charged with full knowledge of the limitation upon the agent’s powers expressed in the terms of the original letter. The agreement further provided for a warranty deed which was not authorized by the letter of instructions. A stronger reason than both, however, is to be found in the statute of 1887, page 274, wherein it .is provided, that to entitle an agent to execute a contract concerning real property he must be thereunto lawfully authorized in writing. There is no pretense that any such authority existed. The contract under which Major claimed was absolutely void and ineffectual for the purpose of granting an option or binding Clement to convey.There is wanting, in Major’s contention, evidence of a valid contract, which under the circumstances of the present ease must be proven as one of the elements of the offense under the statute. On the other hand, according to the case as made by the record, Major had no probable cause to believe that Clement, subsequent to the execution of the contract under which he claimed, had made conveyance for a valuable consideration. He was told that the deed was made to Binney, who lived in Massachusetts, and must have been advised from that circumstance that the deed had never been delivered to the grantee prior to'its record. He was told the deed was executed without any consideration, and to protect the title against the Major option. The statute requires, that in order to constitute the crime of which Major accused the plaintiff, the subsequent deed or contract shall be for a valuable consideration. Since Major, as the case stood on the motion, had knowledge that the deed was not thus executed, it was for the jury to decide whether he had probable cause to believe that a crime had been com *303 mitted under the statute. If the jury should find that the deed was executed without consideration, to his knowledge, he could not under the law justify his subsequent action, and unexplained it would properly subject him to an action for damages. The record very clearly discloses the fact that this was an attempt by Major to force the appellant into making a conveyance of the property according to the conditions ' of the Betts contract, and upon the consideration which he was willing to pay. It was plainly and palpably a resort to the use and abuse of the criminal process to secure for the complainant the enforcement of a simple contract. The jury would have been entitled to find a verdict against appellee, and the court would not have been justified in setting it aside as against the law and without evidence to support it.
Under these circumstances the motion for a nonsuit should not have been granted, and for the error of the court in this particular, the cause is reversed and remanded.

Reversed.