LEA *et ux. v.* STATE.

(*Nashville*, December Term, 1943.)

Opinion filed June 10, 1944.

W. B. WILLIAMS, of Lebanon, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The residence of plaintiffs in error was raided by officers armed with a search warrant and a quantity of whiskey in pint bottles was there found concealed under the floor of one of the rooms. The defendants did not testify and offered no explanation of these convincing facts. They were both convicted of possessing intoxicating liquors and given jail sentences of thirty days and a joint fine of $100.

On this appeal, the admission of the testimony of the officers is assigned as error on the ground that their information was obtained by an illegal search, that the search warrant under authority of which they acted was invalid in that the description of the property was insufficient, the specific objection interposed being that, while the affidavit on which the warrant was based averred that these parties were "in unlawful possession and control of a quantity of intoxicating liquors . . . in violation of law," etc., it did not go further and aver that this particular intoxicating liquor contained more than five per cent alcoholic content, and that it is not unlawful to possess intoxicating liquor unless it contains more than five per cent alcoholic content. The argument is that the affidavit is fatally defective because it fails to negative that the liquor referred to was of a type or kind that might be lawfully possessed, such as beer, ale or wine, contrary to the ruling of this Court that such negativing exceptions are not required to be set forth in indictments charging unlawful possession, etc., of intoxicating liquors. *McHenry* v. *State*, 168 Tenn., 667, 80 S. W. (2d), 655; *Clark et al.* v. *State ex rel. Bobo*, 172 Tenn., 429, 113 S. W. (2d), 374, 782.

It is first to be observed that we are here presented with a challenge of the determination by a judicial officer, in the exercise of the discretion expressly conferred on him by statute, of the sufficiency of the evidence presented to him of probable, or reasonable, cause for his belief that the defendants named in the warrant were in unlawful possession of intoxicating liquor.

Code Section 11901 expressly confers on the magistrate jurisdiction to determine this issue. This section reads: "If *the magistrate is satisfied* of the existence of the grounds of the application, or that there is *probable*

*ground* to believe their existence, he shall issue a search warrant," etc. (Italics supplied.) This definition of the phrase "probable cause," the meaning of which we are considering, is given by Bouvier: "Probable Cause. A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged. *Carl* v. *Ayers,* 53 N. Y. [14], 17; *Fugate* v. *Millar,* 109 Mo., 281, 19 S. W., 71; *Clement* v. *Major,* 1 Colo. App., 297, 29 P., 19." 2 Bouv. Law Dict., Rawle's Third Revision, page 2728.

This Court has repeatedly recognized that "in determining that probable cause appears for issuance of the warrant the magistrate is performing a judicial act." *Gallimore* v. *State,* 173 Tenn., 178, at page 181, 116 S. W. (2d), 1001, at page 1002; *Seals* v. *State,* 157 Tenn., 538, at page 541, 11 S. W. (2d), 879, at page 880; *Hampton* v. *State,* 148 Tenn., 155, 252 S. W., 1007; *Craven* v. *State,* 148 Tenn., 517, 256 S. W., 431. Mr. Justice Cook, in *Hampton* v. *State, supra,* cites *State* v. *Peterson,* 27 Wyo., 185, 194 P., 342, 348, 13 A. L. R., 1284. And that opinion emphasizes that "the finding of 'probable cause' is a judicial question," to be decided by "the judge or magistrate before whom the complaint is filed," citing 24 R. C. L., 707, and a number of decisions. See 3 A. L. R., p. 1519. Moreover, we have applied the material evidence rule to these hearings before the magistrate on this issue of a showing of "probable cause." In *Gallimore* v. *State, supra,* we said: "It is for the magistrate himself to determine whether, in any case before him, it is essential that the name of an informant, otherwise shown to him to be a reliable person, shall be given. In other words, what particular, or specific, facts shall be placed before the magistrate in order to justify the exercise of his discre-

tion in determining whether or not 'probable cause' exists is for the magistrate himself to determine, provided only that it appears from the face of the affidavit that there was material evidence before him supporting his action. To this extent only will this Court review his action.''

In two early cases by our Chief Justice, *Elliott* v. *State*, 148 Tenn., 414, 256 S. W., 431, and *Craven* v. *State*, 148 Tenn., 517, 256 S. W., 431, while strongly emphasizing that the affidavit presented to the magistrate must, ''set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist,''—that otherwise the magistrate would have nothing on which to exercise discretion—and his act ''in issuing the warrant would not be based upon any judicial discretion,''—the opinions clearly recognize that, if the character of the information had by the affiant is disclosed to the magistrate, it is his judicial province to determine its sufficiency. *Hampton* v. *State*, *supra*, so holding, is cited with approval.

The annotation in 3 A. L. R., at p. 1519, calls attention to important distinctions applicable here, where we are considering the sufficiency of the description in the affidavit and warrant. It emphasizes the distinction, in the first place, between the degree of accuracy required in describing the *place* to be searched, and that required in describing the *property* to be searched for. It is said that the place to be searched should ''be designated with sufficient accuracy to prevent the officer from searching the premises of one person under a warrant directed against those of another, while the description of the property to be seized will vary according to whether the *identity* of the property, or its *character*, is the matter of concern.'' (Italics supplied.) The note proceeds to

quote: "Thus, where the purpose of the search is to find specific property, it should be so particularly described as to preclude the possibility of seizing any other. On the other hand, if the purpose be to seize not specified property, but any property of a specified character which, by reason of its character, and of the place where and the circumstances under which it may be found, if found at all, would be illicit, a description, save as to such character, place and circumstances, would be unnecessary, and ordinarily impossible." *State* v. *Nejin*, 140 La., 793, 799, 74 So., 103 (1917).

The Annotator, in 74 A. L. R., at p. 1513, after reviewing and quoting from numerous decisions, says that, "A general description of the things to be seized as intoxicating liquor is sufficient, it being unnecsesary for the affiant to guess at the various kinds of intoxicating liquor, their quantity, or the character of the apparatus used in their manufacture," etc., and again notes the necessity for greater accuracy in designation of a specific thing to be searched for. So it is said in 30 Am. Jur., 537, "The accuracy required in describing the premises is not requisite in describing the liquor."

■ The specific question before us is whether or not the description in the affidavit as a "quantity of intoxicating liquors in possession in violation of law," afforded the magistrate probable cause. or reasonable grounds, for believing that the intoxicating liquor referred to was not beer or wine, legally possessed, but whiskey, rum, brandy, or gin illegal to possess. Was it not competent for the magistrate to be influenced by the generally accepted meaning given the term "liquor" as distinguished from "beer?" Certainly, in common parlance, when one speaks of liquor, he does not ordinarily mean beer. One invited to have a drink of "liquor" would be surprised

and usually disappointed by tender of a bottle of beer. Many men who use one do not use the other. The two are treated and classed as distinct beverages, both in use and in phraseology. An officer who represents to a magistrate that John Doe is hauling a quantity of liquor certainly does not intend to convey the meaning that John Doe is hauling a quantity of beer, and his representation is not so understood by the magistrate. It seems inconceivable that the affiant in this case had in mind beer, or that the magistrate could have so understood him. Was not this magistrate afforded probable cause, "a reasonable ground of suspicion, supported by circumstances," (2 Bouv. Law Dict., Rawle's Third Revision, page 2728) that this defendant was in possession of liquor, as commonly understood, rather than beer?

And this is the meaning in which the term "intoxicating liquor" has been constantly used in our statutes and opinions. The common statutory usage, when both classes of beverage are intended, is to specify both, by some such phrase as "intoxicating liquor, including beer."

Conceding the force of the suggestion that the analogy between the charge in an indictment and that in a search warrant proceeding is not controlling (although it would seem that no greater particularity should be required to show *probable* cause in a preliminary proceeding than is required in a proceeding to determine the guilt or innocence of the accused), we have here an illustration, certainly, of the sense in which the phrase or term "intoxicating liquor" is commonly employed in pleading.

Again, as bearing upon the meaning conveyed to the magistrate by the use of this descriptive phraseology, the fact is that the universal practice has been, since the enactment of legislation legalizing sale and possession of beer with alcoholic content sufficient to intoxicate, if used

in necessary quantity to use this identical phraseology "intoxicating liquor" in referring to and describing liquor other than beer. The printed forms in common use, prepared with care and by legal advice and direction, have been repeatedly accepted as sufficient in the courts of this State, including this Court. The exact question now presented, as to the meaning of the phrase "intoxicating liquor," was considered in *Armstrong* v. *State*, 150 Tenn., 416, 265 S. W., 672, opinion by our Chief Justice, who thus disposed of the question. We quote (150 Tenn., at page 421, 265 S. W., at page 673) : "The warrant here commands a search for 'liquors' and a taking of 'liquors,' if found. It was held in *Hampton* v. *State* that a description of the property as 'intoxicating liquors' was sufficient. We think a description of such property as liquors is equally sufficient. In common use, the word liquor is taken to mean intoxicating liquor, and there is no probability that a misunderstanding will ever arise by reason of such use of the word in a magistrate's search warrant."

It is suggested that at that time beer, an intoxicating beverage, could not be lawfully possessed, as it may now. But, as responded by the Attorney-General, a beverage known as "Home Brew" was in common use, could be lawfully possessed, and was equally as intoxicating as is beer.

Now bearing in mind that we are reviewing a judicial determination of a question of fact by an expressly authorized tribunal, can it be said that the affidavit which described this property as "a quantity of intoxicating liquor," being kept on the premises described "in violation of law," that is, illegally, afforded no probable cause, no material evidential basis, for a belief on the part of the Court that this "quantity of intoxicating liquor" was not beer, possessed lawfully, but "liquor" of a kind unlawful

to possess, such as whiskey, brandy, etc.? It seems clear that this phrase, "a quantity of intoxicating liquor," has a meaning sanctioned by statutory, judicial, and common every day usage which *prima facie* excludes beer, and we cannot escape the conviction that this magistrate was afforded *probable cause*, or reasonable ground, for issuing this warrant, in accordance with the generally accepted practice. It results that the assignment challenging the admission of the testimony is overruled and the judgment of conviction of Fred Lea affirmed.

However, it appears to be conceded that the dwelling house searched was the residence of Fred Lea and his codefendant, Mrs. Lea, was his wife and was on the premises in that capacity. We find no evidence that she was personally in possession of the liquor, or exercising any control over it. The judgment will be reversed as to her on the authority of *Crocker* v. *State*, 148 Tenn., 106, 251 S. W., 914, and cases therein cited.[1]

A companion case, wherein the same parties appeal from a judgment revoking a parol, heard with the instant case, is likewise affirmed as to Fred Lea and reversed as to Fred Lea and reversed as to the wife.

NEIL, PREWITT and GAILOR, JJ., concur. GREEN, C. J., dissents (opinion below).

---

[1]Note: In the case of King v. State, Knox Criminal, recently decided, this Court considered the question of the sufficiency of a description in an affidavit for a search warrant hereinbefore dealt with and at first decided and handed down an opinion holding the warrant invalid, but a petition to re-hear was granted and that decision set aside and the opinion withdrawn and the judgment affirmed on other grounds. The original opinion was prematurely published by West Publishing Co., 174 S. W. (2d) 463. It will not appear in our official reports.

MR. CHIEF JUSTICE GREEN (dissenting).

It seems to me that in this case the Court has sanctioned procedure below which flouts the provisions of Section 7, article 1, of the Tennessee Constitution and Section 11899 of the Code. The constitutional provision protects the people "in their persons, houses, papers and possessions, from unreasonable searches and seizures," and the Code section provides that a search warrant "can only be issued on a probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched."

The affidavit upon which the search warrant herein issued was based on information given to the affiant by a reliable person that "he saw a quantity of intoxicating liquors stored" in the dwelling house of the defendants.

There are many varieties of intoxicating liquors. The receipt, possession and transportation of intoxicating liquors with an alcoholic content of less than five per cent is permissible in all counties of the State. While Wilson County is what is known as a dry county, since the enactment of Chapter 69 of the Acts of 1933, as amended by Chapter 170 of the Acts of 1935, it is not an offense to possess these liquors of small alcoholic content in that territory.

To charge one with the possession of intoxicating liquors in a dry county is not equivalent to a charge of an offense, or of the possession of an article "with the intent to use it as a means of committing a public offense." Certainly in volume more beer and light wines will be found in the possession of people over the State than whiskey, brandy or other ardent spirits.

Under the statutory requirement probable cause must exist for the issuance of a search warrant. There is only

388

possible cause for the issuance of that writ when one is charged broadly with the possession of intoxicating liquors. A search warrant issued upon the possibility of a violation of the law is a search warrant issued on suspicion, and a search based on mere suspicion is not anywhere regarded as a reasonable search.

I do not understand how the majority opinion can be justified in the face of the statute's prohibition of the issuance of a search warrant except upon affidavit "particularly describing the property, and the place to be searched." A particular description of articles is a specific description—a designation of a "subclass which falls under some general concept." Webster's New International Dictionary.

Reasonable particularity would surely require more than a general description embracing both things lawfully received and possessed and things unlawfully received and possessed. We have repeatedly held that a description of the place, equally applicable to another place, was bad. The statute requires that place and property be described with like precision. Our statute should control regardless of decisions elsewhere, and in passing it may be noted that the cases cited in the majority opinion arose when all intoxicating liquor was contraband. I do not mean to suggest that liquors should be described by brand but the affidavit should describe them as whiskey or brandy or some liquor which might properly be seized.

The basis of the Court's opinion must be that beer, ale, light wines and liquors of that character are not intoxicating liquors. In the opinion it is said, "One invited to have a drink of 'liquor' would be surprised and usually disappointed by tender of a bottle of beer." I am not prepared to controvert this suggestion as to the reaction of the majority, when responding to an invitation to have

a drink of liquor, they are offered beer. It remains, however, that our statutes and the decisions of this Court have always treated beer, ale and wines as intoxicating liquors. Many sections of the Code dealing with intoxicating liquors. Sections 11208, 11215, and others, refer to "intoxicating liquors, including wine, ale, and beer." The Legislature thus undertook to remove any question about the matter.

*McKeel* v. *State*, 156 Tenn., 331, 1 S. W. (2d), 784, cited by the majority, decided prior to the Act of 1933, did not hold that home brew was not an intoxicating liquor, but following *Hayes* v. *State*, 145 Tenn., 629, 630, 237 S. W., 1104, merely held that the bare possession of home brew was not an offense. The cause was remanded for a new trial, defendant having been indicted for selling and transporting as well as for possessing intoxicating liquors. It was said that the court should instruct the jury that if defendant did not personally transport, nor receive the home brew from another but made it on his own premises, he would not be guilty of unlawfully possessing liquor. *Hayes* v. *State* dealt with whiskey. The bare possession of whiskey was there held not to be an offense. It was no more intended in the one case than in the other to say that the liquor dealt with was not intoxicating.

Other authorities relied on fail to sustain the Court's conclusion herein. A comparison of the affidavit for a search warrant with an indictment is wholly inapt. An indictment is a mere pleading. An affidavit is the evidence upon which the magistrate adjudges that the warrant shall issue. While an indictment charging merely the possession of intoxicating liquors received from another might be good I presume that no conviction would

be sustained unless it was proven that the liquors were of an alcoholic content exceeding five per cent.

*Armstrong* v. *State*, 150 Tenn., 416, 265 S. W., 672 (1924), rather supports my view of the case. It was there said that in common use the word liquor was taken to mean intoxicating liquor and that the search warrant need not further describe the property. The affidavit upon which the search warrant issued charged a transportation of whiskey and a sale of whiskey. I still think that the word liquor is taken to mean intoxicating liquor and further that it includes beer.

This Court has gone far in sustaining searches in the effort to aid law enforcement. There are limits, however, beyond which we should not stretch constitutional and statutory restrictions. The right of search is carefully guarded by the constitution and by the statutes. The experience of our ancestors required such precautions.

If the affiant desiring a search warrant, or his informant, really knows anything, it is an easy matter for him to say that the intoxicating liquor unlawfully possessed is whiskey or brandy or liquor of that class.

The defendant Lea in the case before us was doubtless bootlegging and is entitled to no great sympathy. I think, however, the principle to be drawn from the decision will give trouble. There are many things such as food, drugs, seeds, and even papers which may be possessed illegally or with intent to use "as a means of committing a public offense." Any of these things may be described by a general term which would include things lawful as well as things illicit. Under the ruling herein the grocer, the druggist, the seed merchant and the citizen may have his premises entered and ransacked upon an affidavit, the statements of which are entirely consistent with his innocence.

It does not help to describe property to be seized as property possessed illegally or with illegal intent. That commits to the officer the judicial discretion which the magistrate should exercise as to what property is to be seized.