IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 19, 2002

## STATE OF TENNESSEE v. JAMES MICHAEL DAVIS

**Appeal from the Criminal Court for Hamilton County**
**No. 229673     Rebecca J. Stern, Judge**

_____

**No. E2001-01656-CCA-R3-CD**
**August 26, 2002**
_____

The defendant, James Michael Davis, was convicted of driving under the influence. The trial court imposed a sentence of 11 months, 29 days, with all but 48 hours suspended. In this appeal of right, the defendant asserts that because the police officers did not have "reasonable suspicion" to warrant an investigatory stop, the trial court erred by denying his motion to suppress. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Ardena J. Garth, District Public Defender (on appeal and at trial); Donna Robinson Miller, Assistant District Public Defender (on appeal); and Karla Gothard, Assistant District Public Defender (at trial), for the appellant, James M. Davis.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; and Mary Sullivan Moore and Dean C. Ferraro, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Officer Charles Brown of the Chattanooga Police Department testified that at approximately 3:00 a.m. on April 28, 1999, he and Cadet Charles Martin, Jr., were on routine patrol when they observed the defendant's vehicle parked along Westside Drive. A female was leaning in the passenger's side window. As the officers' vehicle approached, the defendant drove his vehicle away and "the female started pointing at him in a manner to go after him." The defendant drove across the street into the parking lot of King's Lodge. Because prostitution and narcotics activities were common in the area, the officers activated their blue lights and conducted an investigatory stop. The defendant had an open beer in the vehicle and, according to the officers, "smelled of an intoxicant." When the defendant performed poorly on field sobriety tests, he was arrested.

Officer Brown testified that the defendant saw the cruiser before driving away. While acknowledging that the defendant did not speed or drive erratically, the officer explained that the female, a prostitute with whom the defendant had been talking, pointed "vigorously" at the departing vehicle. After the defendant was stopped, the female talked to the officers.

Officer Martin corroborated the testimony of Officer Brown. He testified that the defendant "fled the scene" and confirmed that the female signaled the officers to stop the car. Officer Martin stated that he suspected that the female was a prostitute and that the defendant had been attempting to solicit her services. He recalled that the defendant performed poorly on three field sobriety tests. During cross-examination, Officer Martin acknowledged that the cruiser's blue lights were not on at the time the defendant drove away and that the defendant drove into the parking lot immediately after they were activated.

The trial court denied the defense motion to suppress, ruling as follows:

> [I]t was 3:00 a.m., the defendant was parked in a business parking lot with someone outside the car talking and one officer, Officer Martin, testified [t]hat [it] appeared to be a ["]disorder["] by the body language. When they pulled up behind the car, the officer testified the car drove off, and a woman continued gesturing, indic[a]ting that some type of disorder was in progress. I think at that point, the officers had articulable suspicion to stop and detain and further investigate the case.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990); Delaware v. Prouse, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). The state always carries the burden of establishing the reasonableness of any detention. See State v. Matthew Manuel, No. 87-96-III (Tenn. Crim. App., at Nashville, Nov. 23, 1988).

Among the narrowly defined exceptions to the warrant requirement is an investigatory stop. See Terry v. Ohio, 392 U.S. 1, 27-28, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). An investigatory stop is deemed less intrusive than an arrest. See id. In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of

the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of the stop of the vehicle depends on whether the officers had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 792 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (quoting Alabama v. White, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

It was approximately 3:00 a.m. when Officers Brown and Martin first observed the defendant's vehicle on the side of the roadway. The area was known for prostitution and illegal drug activity. A female that Officer Brown recognized as a prostitute was leaning into the vehicle's passenger's side window and, according to Officer Martin, appeared to be in a dispute with the defendant. As the defendant drove away, apparently in response to seeing the police cruiser, the female sought the officers' intervention and signaled for them to stop the car. In our view, these facts provided the officers with specific, articulable grounds to suspect that the defendant was involved in solicitation of prostitution which merited an investigation. See State v. Kenneth Carl Scarlett, 880 S.W.2d 707 (Tenn. Crim. App. 1993) (upholding investigatory stop of vehicle at 3:30 a.m. near school from which several recent complaints about prowlers and vandalism had originated); State v. Larry D. Johnson, No. 02C01-9807-CC-00218 (Tenn. Crim. App., at Jackson, June 18, 1999) (upholding investigatory stop where officer on routine patrol had reasonable suspicion that defendant, whom he had observed arguing with two women on their porch, had created a domestic disturbance).

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE