IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 8, 2003 Session

## STATE OF TENNESSEE v. FRED TAYLOR SMITH

**Appeal from the Circuit Court for Tipton County**
**No. 4415     Joseph H. Walker, Judge**

---

**No. W2002-02199-CCA-R3-CD  - Filed October 8, 2003**

---

The defendant, Fred Taylor Smith, entered pleas of guilt to driving under the influence and driving under the influence per se. See Tenn. Code Ann. § 55-10-401(a)(1)-(2).  The trial court merged the two convictions and imposed a sentence of 11 months and 29 days with a requirement of service of 75%.  As a part of the plea agreement, the defendant reserved a certified question of law challenging the validity of the investigatory stop. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

J. Barney Witherington, IV, for the appellant, Fred Taylor Smith.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; and Elizabeth T. Rice, District Attorney General, for the appellee, State of Tennessee.

### OPINION

On October 15, 2001, at approximately 8:00 A.M., Freeman Jones Weems, III, a customer at Jerry's Quick Stop in Munford, observed the defendant stumble twice on his way into the market. According to Weems, once inside the market, the defendant almost fell on two occasions, first attempting to open the beer cooler door and later when he approached the counter. One of the clerks refused to sell beer to the defendant.  When Weems observed the defendant leave the market and enter his car, he followed in his own vehicle.

At the suppression hearing, Weems testified that the defendant failed to slow down as he entered the Munford-Atoka Road, almost causing a wreck.  Weems then telephoned 911 and provided a police dispatcher with a license number and car description.  He continued to follow the defendant while maintaining contact with the 911 dispatcher until police officers arrived about five

minutes after his original call. Weems testified that the defendant "nearly [drove] into his house trying to get in the driveway." Officer Mark Daugherty of the Munford Police Department arrived just before the defendant entered his driveway.

After confirming the license number and the description of the vehicle, Officer Daugherty turned on his blue lights, initiated his siren, and made the stop. The officer acknowledged at the suppression hearing that he based his arrest upon the information received in the dispatch.

The trial court determined that the police officer had made a proper investigatory stop based upon reasonable suspicion and supported by specific and articulable facts. It concluded that because the officer was in direct contact with the dispatcher and in indirect contact with an eyewitness to illegal activity taking place at that moment, the stop was entirely appropriate. The trial court found that the officer had corroborated the information by identifying the vehicle and its license number before activating his blue lights and siren. It further observed that the tip was not anonymous but one from a citizen informant who had identified himself as genuinely concerned by the prospect of a drunken driver.

In this appeal, the defendant contends that the officer did not have a reasonable basis to initiate the stop and that there was inadequate corroboration of the tip provided by the informant. The defendant submits that upholding the validity of the stop would permit any citizen to be seized by a complaint, properly motivated or not, to the dispatcher.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). The state always carries the burden of establishing the reasonableness of any detention. See State v. Matthew Manuel, No. 87-96-III (Tenn. Crim. App., at Nashville, Nov. 23, 1988).

Among the narrowly defined exceptions to the warrant requirement is an investigatory stop. See Terry v. Ohio, 392 U.S. 1, 27-28 (1968). An investigatory stop is deemed less intrusive than an arrest. See id. In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of the stop of the vehicle depends on whether the officers had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 792 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23. The application of the law to the facts, however, requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In this instance, a citizen who had seen the defendant at close range and who had observed his driving on a public road, reported his suspicion that the defendant was driving under the influence to the police. The citizen informant followed the defendant by car, maintained contact with the dispatcher, provided directions for the arresting officer as to the location of the defendant's

automobile, and was present when the officer arrived.  The officer corroborated the license number and description of the vehicle before making the investigatory stop.  In our view, the detention was based upon an articulable and reasonable suspicion that the defendant was driving under the influence.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE