IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2004

## STATE OF TENNESSEE v. RANDOLPH ANDERSON

**Appeal from the Criminal Court for Sumner County**
**No. 842-2003    Jane Wheatcraft, Judge**

_____

**No. M2004-00735-CCA-R3-CD - Filed February 8, 2005**

_____

The defendant, Randolph Anderson, appealed a conviction in the Sumner County General Sessions Court for simple possession of marijuana. In the trial court, the defendant filed a motion to suppress which was granted. In this appeal from the order of suppression, the state argues that the trial court erred by concluding that the arresting officer lacked any basis to stop the vehicle driven by the defendant. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Dee Gay, Assistant District Attorney General, for the appellant, State of Tennessee.

Randolph Anderson, Nashville, Tennessee, pro se.

**OPINION**

On September 3, 2003, Drug Task Force Officer Mike Guthrie observed a black 1995 Saturn traveling northbound on Interstate 65. Although the officer did not believe that the vehicle was exceeding the speed limit, he did see that there was a commercial border or frame holding the license plate. While the numbers on the license plate were visible, the officer chose to make a stop because the issuing county was partially obscured. The stop was recorded by a video camera and included an accompanying audio tape. The officer claimed at the suppression hearing that as he followed the vehicle, he saw the right wheels make contact with the fog line four times within the one-half mile it traveled before stopping. That was not, however, discernible from the video. As the officer approached the car, and after identifying the defendant as the driver, he saw an open can of beer inside. While he was informing the defendant of the reason for the stop, Officer Guthrie smelled alcohol. The defendant, an African-American who was driving to Kentucky to purchase lottery tickets, was asked to recite the alphabet and, as confirmed by the audio, successfully did so.

The officer directed the defendant to step away from the car and asked for and received permission to search. He then utilized a police dog to sniff for the presence of illegal drugs and the defendant acknowledged that there might be a "roach" in the ash tray. A small plastic bag of marijuana was found in the defendant's pants pocket. After the officer determined that there were no outstanding warrants and confirmed the validity of the defendant's driver's license, the defendant was given a citation and released.

The videotape was shown during the hearing as a part of the proof. During his recorded conversation with Officer Guthrie, the defendant, a long-time Saturn employee, denied having crossed over the fog line before parking on the right shoulder of the road. There was also evidence that the defendant had utilized the same Rivergate Saturn license tag holder since the purchase of the vehicle some ten years earlier.

At the conclusion of the evidentiary hearing on the motion to suppress and, after hearing argument from the prosecution that the law enforcement officers in Sumner County had a policy of stopping vehicles with commercial frames to hold license plates, the trial court made reference to the statute utilized as the basis for the activation of the blue lights and the initiation of the stop:

> Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so to prevent the plate from swinging and at a height of not less than twelve inches (12") from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible.

Tenn. Code Ann. § 55-4-110(b).

The trial court further observed as follows:

> I don't think this license plate is illegible. . . . I've got it lined up with the holes. You can see ASJ 168. You can see that it was renewed in March of '04. You can see that it is a Tennessee license plate. I can tell that it is Davidson [County]. I don't know how the officer, especially when he got up on it, could not see that.
> . . . .
> . . . [T]he basic reason for this stop was this license plate, and I don't think that the license plate is in violation of the law. I respectfully have to disagree with the state on that.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). Neither, however, limits all contact between citizens and law enforcement and both are designed, instead, "'to prevent arbitrary and oppressive interference with the privacy and personal

security of individuals.'" INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). Our courts have recognized three types of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause; (2) a brief investigatory stop, which must be supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no objective justification. See Florida v. Bostick, 501 U.S. 429, 434 (1991); Brown v. Illinois, 422 U.S. 590 (1975); Terry, 392 U.S. at 1. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16.

An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of a stop of a vehicle depends on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 791 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the

pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

The scope of review is limited. When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23. The application of the law to the facts, however, requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In this instance, the drug task force officer acknowledged that the dealer frame holding the license plate was the sole basis for the stop. No part of the plate appears to have been illegible. The defendant was not speeding. There was no indication of intoxication or of erratic driving. The video tape corroborates to the extent possible the defendant's claim that his tires never touched the fog line separating the driving lane from the shoulder of the road. The trial court implicitly accredited the testimony of the defendant in that regard. The evidence does not preponderate otherwise. Moreover, the rationale for the intrusion, when measured by the level of public concern, was not particularly compelling, and would not overcome constitutional protections.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE