# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 27, 2004 Session

## STATE OF TENNESSEE v. JAMES VANDERGRIFF

**Direct Appeal from the Criminal Court for Hawkins County**
**No. CR223     James E. Beckner, Judge**

---

**No. E2004-00528-CCA-R3-CD - March 8, 2005**

---

Following the trial court's denial of the defendant's motion to suppress, the defendant pled guilty to possession with the intent to deliver a Schedule II controlled substance, cocaine, in an amount greater than .5 grams, a Class B felony, in exchange for a sentence of eight years as a standard Range I offender in the Department of Correction. The defendant sought to reserve a certified question of law regarding the trial court's denial of his motion to suppress. The issue before us is whether the trial court erred in its determination that probable cause existed for the defendant to be stopped. After a careful review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Jerry L. Smith and Alan E. Glenn, JJ., joined.

Daniel G. Boyd, Rogersville, Tennessee, for the appellant, James Vandergriff.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Douglas Godbee, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  FACTS AND PROCEDURAL HISTORY

The defendant, James Vandergriff [1], was indicted for possession with the intent to deliver a Schedule II controlled substance, cocaine, in an amount greater than .5 grams. He subsequently filed a motion to suppress the evidence. He alleged that the cocaine was found as a result of an "unlawful search and seizure of [his] property" following an illegal traffic stop.

---

[1]     In accordance with the policy of this Court, we are spelling the defendant's name as shown on the indictment. However, a review of the record reveals that the proper spelling is "Vandegrift."

At the hearing, Captain Ronnie Lawson of the Hawkins County Sheriff's Department testified that agents from the Second Judicial District Drug Task Force and the Drug Enforcement Administration (DEA) notified him of illegal drug activity at 1009 Lisa Street in Hawkins County, Tennessee. DEA Agent Don Grace placed Lawson in direct contact with a confidential informant.

Lawson stated that he learned that 1009 Lisa Street was a delivery point for an upcoming shipment of cocaine from Detroit, Michigan. With the help of other officers, he immediately set up surveillance at the residence. He testified that, within a short period, two vehicles that matched the informant's descriptions arrived at the residence.

Lawson stated that, over the next few weeks, he had several additional conversations with the informant. Video and individual surveillance also continued. Lawson learned that a second delivery would be arriving from Detroit in a white Chevrolet Malibu.

Lawson testified that Agent Chris Wilhoit of the Tennessee Bureau of Investigation (TBI) informed him when the narcotics had arrived at the residence. Wilhoit and another officer then left the scene to obtain a search warrant.[2] Lawson stated that he and Sergeant Tony Allen kept watch over the residence.

When Lawson and Allen spotted the defendant driving away from the scene in a white Chevrolet Malibu, they pursued the vehicle and effectuated a stop. During the pursuit, the defendant ran a stop sign. However, both Lawson and Allen testified that they stopped the defendant for transporting crack cocaine. The defendant later admitted that the officers never told him that he had run a stop sign, nor did they issue him a citation. The defendant was immediately taken into custody and moved to a nearby parking lot.

During the hearing, the State stated, "for the record, the evidence which is the subject of this indictment is the two plastic bags of . . . cocaine which was found in the police cruiser . . . and on the gravel area where [the defendant] was patted down . . . ." Both Lawson and Allen testified that the defendant was only patted down for weapons and not searched for drugs. The cocaine recovered from the police cruiser was found where the defendant had been sitting, "stuffed where the bottom of the seat and the back of the seat, where it pulls back and forth . . . ." Lawson and Allen testified that the defendant had been moving around while handcuffed in the patrol car.

Agent Shannon Kinser of the TBI testified that, once the defendant was placed in the back of the car, he saw "another small baggy of rock-like substance believed to be crack cocaine laying [in] the same area where [the defendant] was searched." Kinser testified that he had not seen the defendant drop anything on the ground.

The defendant testified that he was moving around because "the handcuffs was, of course,

---

[2] A judge found probable cause to issue a search warrant. However, the search and seizure occurred before Wilhoit had returned with the warrant.

tight . . . ." The defendant stated that "Sergeant Allen went into the car and sat there for a few minutes and then he said he had - - he found something." In response to the cocaine found on the ground, the defendant stated, "[W]hen they were about to put me in the vehicle, the other T.B.I. agent said, [l]ook what I found. And he said, [t]hat's yours, too." The defendant stated that the officers did not ask for consent to search the vehicle.

The trial court denied the motion to suppress, finding that sufficient probable cause of criminal activity validated the stop of the defendant's vehicle and that the traffic violation was immaterial. The trial court stated:

> At the time the stop occurred, the local law enforcement team had all of that information, reliable information from a reliable informant which had been corroborated by personal observation, not in a hasty manner but with great deliberation after lengthy observation and after a probable cause had been found by a sessions judge in issuing a warrant.
> Those facts and circumstances gave the local law enforcement team not just reasonable suspicion of criminal activity, such as to justify a Terry stop, but it gave them actual probable cause.
> . . . .
> The evidence found, it seems, is circumstantially linked to the defendant rather than directly, and that's a question of fact for the jury, but it can be introduced and it is admissible in the trial of the case.

The defendant then pled guilty to the offense. The trial court contemporaneously filed a standard judgment form and an order that both formally denied the motion to suppress and reserved a certified question of law. However, the standard judgment form does not list the question of law, nor does it refer to the order.

## II. ANALYSIS
### A. Certified Question of Law

Before we can examine the merits of the defendant's search issue, we must first determine whether a certified question of law is properly before this Court. Tennessee Rule of Criminal Procedure 37(b)(2) controls reservation of a certified question of law upon a plea of guilty. This rule requires:

> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review; (B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved; (C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and (D) The judgment or document must reflect that the defendant, the state,

and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(i). The burden to properly certify a question for appeal lies with the defendant. State v. Pendergrass, 937 S.W.2d 834, 838 (Tenn. 1996).

Our supreme court has explicitly set prerequisites for appellate consideration of a certified question of law under Rule 37(b). See State v. Preston, 759 S.W.2d 647 (Tenn. 1988). The court stated that "[r]egardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue . . . [an] appeal must contain a statement of the dispositive certified question of law reserved . . . for appellate review" and that "the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved." Id. at 650.

In this case, the trial court contemporaneously entered a standard judgment form and a final order denying the motion to suppress and stating the certified question of law. We agree with the State that the judgment form, standing alone, does not meet the requirements of Preston or Rule 37(b). However, the contemporaneously filed final order adequately reserved the question.

In pertinent part, the trial court's order states:
The defendant, by and through his attorney . . . moved the Court for a conditional plea to be allowed in this cause to permit the defendant to appeal the decision overruling the motion to suppress to the Court of Criminal Appeals in Knoxville, Tennessee. The Court allowed the aforementioned conditional plea. As a part of the motion, the Court allowed the reservation of the question to be appealed pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure and does hereby certify the question of law stated as follows:
The Court erred in determining there was probable cause for the defendant, James Vandegrift, to be stopped. The defendant was immediately taken into custody at which time a search ensued. As a result of the stop, an unlawful search was conducted and the defendant was unlawfully detained in violation of his Constitutional rights against unreasonable searches and seizures. The evidence discovered as a result of the search and in the defendant's possession was found to be admissible and admitted into evidence.
The Court finds that the question should be certified and the defendant allowed to appeal the above question. All parties agree that the certified question of law would be dispositive of the case.

The order clearly demonstrates the parties' intentions and meets the procedural requirements of Preston.

The Tennessee Supreme Court reached a similar issue in State v. Armstrong, 126 S.W.3d 908

-4-

(Tenn. 2003).  In <u>Armstrong</u>, the judgment form did not reference a certified question of law. However, the court stated that a corrective order, filed two days later, which contained the certified question of law, was sufficient to cure the judgment.  <u>Id.</u>

In <u>State v. Paul Anthony Wright</u>, No. W2001-02574-CCA-R3-CD, 2003 WL 1860526 (Tenn. Crim. App. at Jackson, April 7, 2003), this Court held that a contemporaneously-filed order stating the certified question cured a judgment form that did not reference the order.  This Court stated:

> The better practice in this case would have been for the judgment form to reference the trial court's order certifying the question of law.  However, since the order, which complies with all of the <u>Preston</u> requirements, was filed while the trial court maintained jurisdiction in the case, we conclude that the defendant has properly certified his question . . . .

<u>Id.</u> at *6.

The State also claims that the question is not properly stated in the order.  Rule 37(b)(2)(i)(b) of the Tennessee Rules of Criminal Procedure requires that a question "identify clearly the scope and limits of the legal issue reserved . . . ."  The defendant has rephrased the question on appeal to argue that police officers exceeded the scope of a traffic stop, causing unreasonable detention of the defendant and illegal collection of the evidence.  At the hearing, the defendant employed <u>State v. Troxell</u>, 78 S.W.3d 866 (Tenn. 2002), and <u>State v. Chearis</u>, 995 S.W.2d 641 (Tenn. Crim. App. 1999), to argue that the search was outside the parameters of a traffic stop.  However, the defendant is tied to the question as stated in the trial court's order.  The single dispositive issue in the question as reserved by the trial court is whether the trial court erred in determining that probable cause justified the stop.  The remainder of the defendant's certified question challenges the evidence as the product of an unlawful search.  All of the proof at the hearing, even the defendant's testimony, was that the drugs were found on the ground and in the officer's car rather than as a result of a search.

For the foregoing reasons, this Court will analyze the dispositive issue of whether the trial court "erred in determining there was probable cause for the defendant . . . to be stopped."

**B.  The Probable Cause Determination**

As a general rule, the reasonableness of a stop of an automobile turns on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law.  <u>See</u> <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979); <u>State v. Coleman</u>, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989).  Probable cause can be defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act.  <u>See</u> <u>Lea v. State</u>, 181 S.W.2d 351, 352 (Tenn. 1944).  Although probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968); <u>see also</u> <u>State v. Watkins</u>,

827 S.W.2d 293 (Tenn. 1992) (applying Terry doctrine to vehicular stop). "Reasonable suspicion is a less demanding standard than probable cause . . . in . . . that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." State v. Pulley, 863 S.W.2d 29, 32 (Tenn. 1993) (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).

When reviewing a trial court's determinations at a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). A trial court's findings of fact will be upheld unless the evidence preponderates otherwise. Id. "The defendant bears the burden of showing that the evidence preponderates against the trial court's findings." State v. Huskey, 66 S.W.3d 905, 917 (Tenn. Crim. App. 2001) (citation omitted). This Court must review the trial court's application of law to the facts purely de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). The State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence." Odom, 928 S.W.2d at 23. When evaluating a trial court's ruling on a pretrial motion to suppress, we may consider "the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

In the instant case, the trial court determined:
> At the time the stop occurred, the local law enforcement team had all of that information, reliable information from a reliable informant which had been corroborated by personal observation, not in a hasty manner but with great deliberation after lengthy observation and after a probable cause had been found by a sessions judge in issuing a warrant.
> Those facts and circumstances gave the local law enforcement team not just reasonable suspicion of criminal activity, such as to justify a Terry stop, but it gave them actual probable cause.

The existence of probable cause is sufficiently supported in this case. Lawson was in direct contact with a variety of law enforcement agents and with a reliable informant over the span of several weeks. The informant's reliability is unchallenged. He provided accurate and detailed descriptions of the operation and of the transportation vehicles. Officers conducted extensive surveillance at the defendant's residence to corroborate the information.

Accordingly, we conclude that the record supports the determination of the trial court that officers had probable cause and that exigent circumstances existed to stop the defendant's vehicle. Further we note, although not recognized by the defendant, that he abandoned the cocaine in question on the ground and in the patrol car.

### III. CONCLUSION

Accordingly, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE