MONROE *v.* STATE.

(*Knoxville,* September Term, 1952.)

Opinion filed December 5, 1952.

SIDNEY DAVIS, of Clinton, for plaintiff in error.

KNOX BIGHAM, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Monroe has ·appealed from a conviction upon an indictment charging that he did "unlawfully possess and transport a deer (female) * * * at a time and in an area other than at a time and within an area designated by the Tennessee Game & Fish Commission in its promulgation of open seasons." Section 42, Chapter 115 of the Public Acts of 1951. His punishment was fixed at a fine of $200 and a ninety day jail sentence.

A Conservation Officer of the State saw a Cadillac automobile belonging to the plaintiff in error parked on a road in the woods near Andersonville about 9:30 in the morning of November 20, 1951. A pick-up truck was parked 60 or 75 yards from this Cadillac. This was the only road in the woods or forest that was passable by automobile. Some distance from this automobile and truck the Conservation Officer saw a dog chasing a deer and shortly thereafter he heard three shots. Not knowing how many people were hunting in the area, which was known to have a considerable number of deer, the Conservation Officer went to a store and called the Highway Patrol for assistance. In a very short time thereafter two or three Highway Patrolmen came to the place and, in company with the Conservation Officer, they saw a pick-up truck coming out the road being followed by the Cadillac which was driven by the plaintiff in error. At

the time that they saw these vehicles coming out this road was about 1:00 o'clock in the afternoon. The officer stopped the pick-up truck and when they did so a man got out and commenced motioning in the direction of the Cadillac. In the bed of the pick-up truck there were three shotguns and the same dog that the Conservation Officer had previously seen chasing the deer. The Cadillac came to a stop and the officers observed blood on the door handle and steering wheel and big game ammunition on the seat of the car. It seems that about this time or somewhere along in this neighborhood they then sent to try to get a search warrant for the Cadillac but the State conceded on the trial that this warrant was void. The officers requested of the plaintiff in error permission to look in the trunk of his automobile but he told them that it had been locked for two months and that the key was lost. One of the Highway Patrolmen pulled out the back seat of the Cadillac and placing his hand in the trunk compartment, felt the body of the deer. The Cadillac was then taken to Clinton where the trunk was opened by a mechanic and a freshly killed doe was found therein.

This appeal presents the single insistence that the search of this automobile was unlawful and the evidence obtained thereby inadmissible.

The Chapter of the Public Acts under which this indictment was found, Chapter 115 of the Public Acts of 1951, is a comprehensive enactment for the protection and preservation of game and fish. The first Section of the Act provides that the ownership and title of wildlife is in the State. Section 5 of the Act is as follows:

"Sec. 5. Be it further enacted, That the Game and Fish Director or the conservation officers shall en-

force all laws now enacted or that may hereafter be enacted for the propagation and preservation of all wildlife in this State, and shall prosecute all persons, firms and corporations who shall violate any of such laws, and he himself or his conservation officers shall seize any and all wild animals, wild fowls, wild birds, fishes, frogs and other aquatic animal life, or parts thereof, that have been killed, caught, or taken at a time, in a number or for a purpose, or which are in possession, or that have been shipped, transported, carried or taken in this state or brought into this state from another state contrary to the laws of this state. Provided, further, it is hereby made the duty of every person participating in the privileges of taking or possessing such wildlife as permitted by this Act to permit the Game and Fish Director or his conservation officers to ascertain whether the requirements of this Act are being faithfully complied with, including the possession of a proper license. Any person who shall refuse such inspection and count by any authorized officer of the State, or who shall interfere with such officer or obstruct such inspection or count shall be guilty of a misdemeanor, and upon conviction be punished by a fine of not less than twenty-five ($25.00) nor more than fifty dollars ($50.00).''

The plaintiff in error takes the position that this section does not authorize the Conservation Officers to make searches without search warrants. If we were to accept the contention of the plaintiff in error, we would be saying that this Section compels the hunter, under pain of certain penalties provided therein, to permit the officer to make the search, but forbids the officer from making

the very search which the hunter is required to submit to. Clearly the contention contended for by the plaintiff in error is an improper construction. By imposing upon the hunter the duty to allow the inspection the statute vests in the Conservation Officer a corresponding authority to make the search. This Court had before it almost the identical language from the Act of 1931, Section 7, Chapter 51, as that above quoted from the 1951 Act in the case of *State* v. *Hall,* 164 Tenn. 548, 51 S. W. (2d) 851, 852. In that case Hall had been presented for violation of the 1931 Act and the lower court had quashed the presentment on the ground that the Act deprived Hall of his guaranties against unreasonable searches and seizures under the Constitution. This Court held the Act valid and reversed the trial court. In the Hall case it was not expressly held that the Act authorized Game Wardens to make searches without search warrants but such is clearly the inescapable implication. This Court speaking through the late Mr. Justice McKinney cited a wealth of authority to illustrate the proposition that he who undertakes to avail himself of a privilege granted by the State must do so on whatever terms and conditions the State chooses to annex to the exercise of the privilege, including the waiver of constitutional rights. It was pointed out in that case that the hunting of wild animals is a privilege granted by the State. The Court among other things said:

"This being true, we see no reason why the state may not annex to this privilege any condition and limitation it sees fit. If the sportsman is unwilling to avail himself of the privilege accorded him, upon the terms and provisions prescribed, he may decline the invitation, but he cannot enjoy the benefits of

this act without submitting to its burdens and restrictions.''

We think the Hall case is a conclusive answer to the question here presented. For the reasons assigned the judgment of the trial court must be affirmed.