290

Hughes *et al. v.* State.

(*Knoxville,* September Term (May Session) 1952.)

Opinion filed June 5, 1953.

Roy N. Stansberry, of Knoxville, A. L. Fox, of Clinton, and Phil Mason, of Lake City, for plaintiffs in error.

Knox Bigham, Assistant Attorney General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

This appeal involves the conviction of plaintiffs in error upon the charge of unlawfully possessing and transporting a deer, the same being contrary to the provisions of Section 42, Chapter 115 of the Public Acts of 1951. They were each fined $50 and sentenced to 30 days in jail.

The counsel for the defendants have filed 13 assignments of error, all of which relate to the right of search without a search warrant.

No question is made as to the indictment or the constitutionality of the statute upon which it is based. Section 42 of Chapter 115 of the Public Acts of 1951 provides:

"*Be it further enacted,* That it shall be unlawful for any person to hunt or take deer, bear, or wild boar, with any shotgun using ammunition loaded with more than one solid ball, or with a rifle using rim fire cartridges or ammunition of less than .25 caliber, or to pursue, capture, possess, transport, or store any deer, bear, or wild boar, either male or female, in the State of Tennessee at any time or in

any area other than at times and within the area designated by the Game and Fish Commission in its promulgation of open seasons, as provided by this Act."

Section 5 of the Act makes it the duty of conservation officers to ascertain whether the requirements of the Act are being complied with. Any person refusing to permit an inspection etc. shall be guilty of a misdemeanor.

The record discloses the following facts:

"Jessie Butcher, a conservation officer, received information by way of a telephone call from a policeman that Plaintiffs in Error were going deer hunting in a particular area. The information named the area and gave the license number and a description of the automobile. Early in the morning on the day after receipt of this advice Butcher got up and made preparations to apprehend Plaintiffs in Error. He first saw the car when he was traveling between the Anderson County line and Norris Dam. Having summoned two other officers to his aid he went into a deer area near Cedar Creek in Campbell County and there saw the automobile at the place where he had been informed it would be. The car was pulled back in a wagon road beside a dirt road. The officers left to obtain a warrant and finally succeeded in doing so in Anderson County. The search warrant was not relied upon by the State at the trial. The officers stationed themselves in Anderson County and after some time Plaintiffs in Error approached in the automobile that had been seen in the deer area. The car was stopped and Wright, who was the driver, opened the trunk at the request of the officers. Inside there was found a freshly killed doe. When the officers stopped the car they could see two rifles on

the inside. This arrest was made some two or three hours after and at least thirty miles from the deer area where the automobile had been previously seen."

The foregoing is taken from the State's "Statement of the Case" and its accuracy is not questioned by counsel for the defendants.

The contention of defendants' counsel is that conservation officers are not privileged to search and inspect a hunter's equipment, automobiles and the like, without a lawful search warrant *except within a hunting area;* that the defendants were at least 30 miles from the alleged area and were not apprehended for some two or three hours after they had left it.

It is not controverted that these defendants had been seen within the restricted hunting area, following the receipt of reliable information by conservation officers that they "intended to go hunting". When arrested they were in possession of rifles which was a strong circumstance in confirmation of the information received by the officers; they also possessed a deer which had been killed.

██ We cannot agree with the foregoing insistence that the search of the defendants' automobile was unlawful on the ground that it was not made within the hunting area. The law applicable to the right of game wardens and other conservation officers to search and make an inspection of sportmen's equipment was definitely settled in *State* v. *Hall,* 164 Tenn. 548, 51 S. W. (2d) 851, and in the very recent case of *Monroe* v. *State,* Tenn. Sup., 253 S. W. (2d) 734. In the latter case the Court reaffirmed the holding in *State* v. *Hall,* that the accused having availed himself of the privilege of hunt-

ing the law made it mandatory upon him to permit a search or inspection without a search warrant.

The counsel seek to distinguish the Monroe case from the case at bar in that the search of Monroe's Cadillac car was made within the hunting area while the defendants, when their car was searched, were 30 miles from such an area. But the principle of law controlling the right of search is the same. If conservation officers are denied the right of search and inspection without a warrant of persons exercising the privileges of hunting and fishing except within a specified area the law at once becomes a nullity.

We do not wish to be understood as holding that a search and inspection may be made without a warrant of persons and their equipment *at any time or place* after the privilege has been exercised, such as searching the premises and person of the accused days after the hunt is over. But where it appears without dispute that such person is shown to have been exercising the privileges accorded him under the Act, as in the instant case, and is leaving the scene of his operations, or has left it for a reasonable time, he is still amenable to the law which permits a search of his person and equipment without a search warrant.

The assignments of error are overruled, and the judgment of the trial court is affirmed.