IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2004 Session

## STATE OF TENNESSEE v. JOHN ALLAN LEZOTTE

**Appeal from the Criminal Court for Monroe County**
**No. 04-007     Carroll L. Ross, Judge**

---

**No. E2004-01002-CCA-R3-CD - Filed February 18, 2005**

---

The defendant, John Allan Lezotte, entered pleas of guilt to driving under the influence and child endangerment, reserving the right to appeal a certified question of law.  See Tenn. R. App. P. 3(b); Tenn. R. Crim. P. 37(b)(2).  The single issue presented for review is whether the trial court erred by denying the defendant's motion to suppress.  The judgments are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON, AND JAMES CURWOOD WITT, JR., JJ., joined.

Robert M. Cohen, Maryville, Tennessee, for the appellant, John Allan Lezotte.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Chalmers Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On August 17, 2003, Officer Randy Huskey of the Tennessee Wildlife Resources Agency was patrolling the Carson Island/Smokey Branch Area of Tellico Lake by boat when he observed the defendant, who was on shore with a can of beer in his hand.  The officer traveled to the Tellico Harbor Marina, docked, and then drove to the entrance of the Carson Island boat ramp, where he met Wildlife Officer Joe Pike.  As the two officers awaited the arrival of Officer Corey Russell, the defendant, driving a pick-up truck, slowly approached them on a gravel road.  According to Officer Huskey, a fishing rod in the back of the truck was visible.  When he saw coolers in the rear of the vehicle and observed that a child passenger was not wearing a seat belt, he directed the defendant to stop.

At the suppression hearing, Officer Huskey, whose interest was piqued when he saw the defendant with the beer, testified that he stopped the defendant not only to check whether he had a

fishing license but also because the child was not properly restrained. The marina was known to the officer as a "problem area" for unruly behavior. According to Officer Huskey, when the defendant opened the door he smelled of alcohol and had to use both hands to steady himself. Officer Huskey saw that the child was small, about two years of age, and did not have any restraining device. The defendant claimed that he had not been fishing and maintained that the officer could not have seen the fishing pole in the back of his truck. The officer, however, maintained that the primary reason for the stop was to determine whether the defendant had a fishing license . The stop eventually evolved into an arrest for driving under the influence of alcohol.

After listening to an audio tape of the preliminary hearing and considering the evidence submitted during the suppression hearing, the trial court concluded that the officer had actually begun his investigation as a result of seeing the defendant with a beer in his hand in "a trouble area . . . a problem island." The trial court concluded that Officer Huskey had contacted two other officers to assist in the investigation which, in the observations of the trial court, "had nothing to do . . . with fishing." Affording little credence to testimony regarding the presence of the fishing pole and the basis for a license compliance check, the trial court determined that the officers nevertheless had a valid basis for an investigatory stop because Officer Huskey had seen the defendant drinking and, minutes later, driving his vehicle. It was the trial court's observation that if an officer knows "somebody's drinking and they're in a vehicle, but [does not] know to what extent," there is a valid reason for an investigatory stop. The trial court chose not to address whether "someone on a ramp at a fishing dock with fishing tackle in the back of [his] vehicle and coolers can't be stopped and asked for [his] license."

In this appeal, the defendant argues that his having been seen with a beer in his hand was an insufficient basis for an investigative stop. He also contends that the presence of a fishing pole in his vehicle is not an indication that he had been fishing, thereby warranting a stop, and that any reference to the lack of restraint for the child passenger in his vehicle was pretextual. In response, the state argues that because Officer Huskey saw the defendant with a beer in his hand minutes before the stop and because there had been reports of misbehavior in the general area, an investigatory stop was warranted. In the alternative, the state, citing Hughes v. State, 259 S.W.2d 527 (Tenn. 1953), and Monroe v. State, 253 S.W.2d 734 (Tenn. 1952), contends that wildlife officers may make investigatory stops of those persons participating in the privilege of fishing or hunting at any time. The state also argues that the officer had a reasonable basis to stop the vehicle when the child occupant was observed in the front seat of the vehicle without any restraining device.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). Neither, however, limits all contact between citizens and law enforcement and both are designed, instead, "'to prevent arbitrary and oppressive interference with the privacy and personal security of individuals.'" INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v.

Martinez-Fuerte, 428 U.S. 543, 554 (1976)). Our courts have recognized three types of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause; (2) a brief investigatory stop, which must be supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no objective justification. See Florida v. Bostick, 501 U.S. 429, 434 (1991); Brown v. Illinois, 422 U.S. 590 (1975); Terry v. Ohio, 392 U.S. 1 (1968). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16.

An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of a stop of a vehicle depends on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 791 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez,

449 U.S. 411, 417-18 (1981)).  Objective standards apply rather than the subjective beliefs of the officer making the stop.  State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

The scope of review is limited.  When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict.  State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994).  The trial court's findings are binding upon this court unless the evidence in the record preponderates against them.  State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984).  Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact.  The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence.  Odom, 928 S.W.2d at 23.  The application of the law to the facts, however, requires de novo review.  State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000).  Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness.  State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Because the trial court made no findings beyond the reasonableness of the stop based upon the defendant's driving after the consumption of beer, this court will examine the propriety of the search on that issue.  The record establishes that the area was known for unruly behavior.  The officer had seen the defendant drinking beer and, when he arranged for other officers to meet him and assist, he observed the defendant driving with coolers in the back of his truck and an unrestrained two-year-old in the front seat.  Under those circumstances, an investigatory stop appears reasonable.  Some deference must be given the findings of fact by the trial judge.  Furthermore, there is a significant public concern for driving safety and especially for the safety of the children who are passengers of an automobile.  Here, the initial degree of intrusion was fairly minimal.  The officers were on foot and the defendant was driving slowly in their direction on a gravel road.  Officer Huskey had an articulable basis for suspicion.  The officer had seen the defendant consuming alcohol in an open area known for unruly behavior only minutes before seeing him driving his vehicle. When the defendant opened the door, the smell of alcohol and the unsteadiness of gait gave reason for a full arrest.

Accordingly, the judgments are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE